IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**BENNY MARSHALL KING and**
**JEREMIAH KING,**

        Plaintiffs,

v.                                        CIVIL ACTION NO.: 3:25-CV-36
                                                      (GROH)

**MARK YODER,**
**SAM SMITH, and**
**CITY OF PAW PAW,**

        Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT SMITH'S MOTION TO DISMISS,**
**GRANTING DEFENDANT CITY OF PAW PAW'S MOTION TO DISMISS,**
**AND DENYING DEFENDANT YODER'S MOTION TO DISMISS**

Now before the Court are Defendant Smith's Motion to Dismiss [ECF No. 3] and Defendants Yoder and City of Paw Paw's Motion to Dismiss [ECF No. 5]. On October 21, 2024, Plaintiffs Benny Marshall King and Jeremiah King (collectively, "Plaintiffs") filed a Complaint in the Circuit Court of Morgan County, West Virginia against Defendant Yoder, Defendant Smith, and the City of Paw Paw (collectively, "Defendants").[1] ECF No. 1-1. Plaintiffs allege that: (1) Defendant Yoder engaged in malicious prosecution and

---

[1] Recent filings have noted that the initial Complaint incorrectly names Defendant Town of Paw Paw as "City of Paw Paw," and Defendant Marc Yonker as "Mark Yoder." ECF No. 5. Additionally, it appears Plaintiff Benny Marshall King has been misspelled in the case caption, with the Complaint listing Plaintiff's name as "Benny Marshal King." ECF No. 1-1. Noting the errors, in the interest of clarity and consistency, this Court will nevertheless refer to the defendants as they are named in the case caption unless otherwise specified in this Order.

defamation against Plaintiffs; (2) Defendants Yoder and Smith violated Plaintiffs' Fourth Amendment rights; and (3) Defendant City of Paw Paw engaged in negligent behavior. Id. On March 5, 2025, Defendants Yoder and City of Paw Paw removed this case from the Circuit Court of Morgan County, West Virginia. ECF No. 1. No objections to this removal were filed. On March 5, 2025, Defendant Smith filed a Motion to Dismiss and Memorandum in Support [ECF No. 3]. On March 12, 2025, Defendants Yoder and City of Paw Paw filed a Motion to Dismiss and Memorandum in Support [ECF Nos. 5, 6]. On June 4, 2025, Plaintiffs filed a Response [ECF No. 19] – styled an Opposition – to Defendants' Motions to Dismiss. And, on June 4, 2025, Defendant Smith filed a Reply [ECF No. 20] to Plaintiffs' Response. Thus, the pending Motions to Dismiss are ripe for review.

## I. Background

On or about November 10, 2022, Plaintiffs allege they purchased a utility trailer in Paw Paw, West Virginia. ECF No. 1-1 at 3. Later in the day, while Plaintiffs were parked at a Dollar Store parking lot, Defendant Yoder – then a police officer with the City of Paw Paw – approached Plaintiffs and inquired as to the missing tags on Plaintiffs' utility trailer. Id. When Plaintiffs explained they had just purchased the trailer that morning and refused to allow Defendant Yoder to search the vehicle, Defendant Yoder purportedly "flew into a rage." Id. Plaintiffs allege Defendant Yoder than pepper sprayed Plaintiff Benny King multiple times, despite a lack of "aggressive or violent moves" from said Plaintiff. Id. Defendant Yoder allegedly informed Plaintiff Jeremiah King that he was free to go, and Plaintiff Jeremiah King called law enforcement. Id. at 4. Shortly thereafter, Defendant Smith – a West Virginia state trooper – arrived with two other officers. Id. After speaking

2

with Defendant Yoder, Defendant Smith apprehended Plaintiff Jeremiah King, who Defendant Yoder alleged had fled the scene. Id. Plaintiffs were detained and their vehicle and trailer were towed away. Id. Plaintiffs allege that footage from Defendant Yoder's bodycam and a nearby store camera mysteriously disappeared, and that either Defendant Yoder or Defendant Smith destroyed the named footage. Id. at 5. On February 16, 2023, the State of West Virginia dropped all charges against both Plaintiffs. Id. Plaintiffs allege they incurred impound fees in excess of the value of the trailer after the City of Paw Paw refused to release the trailer. Id. Plaintiffs further allege they have suffered "significant economic losses" as a result of their incarcerations, as well as reputational damage, significant pain and suffering, and emotional distress. Id. at 5–6.

On October 21, 2024, Plaintiffs filed their Complaint, alleging the above. See generally id. On March 5, 2025, Defendant Smith filed a Motion to Dismiss and Memorandum in Support. ECF No. 3. Defendant Smith's Motion argues that Plaintiffs' Complaint should be dismissed because: (1) Plaintiffs failed to serve pre-suit notice pursuant to West Virginia Code § 55-17-3; and (2) Defendant Smith is entitled to qualified immunity.

On March 12, 2025, Defendants Yoder and City of Paw Paw filed a Motion to Dismiss and Memorandum of Law [ECF Nos. 5, 6]. Defendants Yoder and City of Paw Paw argue that Plaintiffs' Complaint should be dismissed because: (1) Plaintiff's Complaint fails to allege sufficient facts in support of a claim for a Fourth Amendment violation; (2) the malicious prosecution and defamation claims are time-barred; and (3) the negligence claims fail to state any cognizable legal causes of action.

On May 30, 2025, following a deadline extension, Plaintiffs filed a Response [ECF No. 19] – stylized as an "Opposition" – to all Defendants' Motions to Dismiss. Plaintiffs largely reiterated their claims via a number of declaratory statements, and they introduced no new legal arguments or objections. See generally id.

On June 4, 2025, Defendant Smith filed a Reply [ECF No. 20] to Plaintiffs' Response, arguing that Plaintiffs failed to plead any factual allegations which would satisfy the plausible pleading standard to defeat a motion to dismiss.

## II.  Applicable Law

### A.  Federal Question Jurisdiction

When an action is removed from state court, a federal district court must first determine whether it has original jurisdiction over the claims. Federal question jurisdiction exists for all civil actions arising under the Constitution and laws or treaties of the United States. 28 U.S.C. § 1331. Under the well-pleaded complaint rule, the plaintiff's complaint is determinative of federal jurisdiction. Thus, the federal question jurisdiction must be clear from the face of the complaint and cannot be based on federal law defense or plaintiff's anticipation of such defense. See Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986).

### B.  Supplemental Jurisdiction

District courts may also exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Shanaghan v. Cahill, 58 F.3d 106, 109–110 (4th Cir. 1995). Therefore, supplemental jurisdiction "allows parties to append state law claims over which federal courts would

otherwise lack jurisdiction, so long as they form part of the same case or controversy." Id. (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724–26 (1966)). The Court's determination as to whether to exercise supplemental jurisdiction is discretionary, as it "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values."

### C. Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to challenge the complaint's sufficiency in this regard by moving to dismiss a complaint for failing to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must ultimately allege "enough facts to state a claim to relief that is plausible on its face," and, if the Court takes those facts as true, "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–70 (2007). Further, facial plausibility exists when the complaint "pleads factual content that allows the court to draw the reasonable inference" that the defendant is liable for the misconduct that has been alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" Id. (citing Twombly, 550 U.S. at 555, 557).

### III. Analysis

First, this Court considers what grounds give it jurisdiction over this case. To begin, the claims alleged against Defendant may be organized into two categories: (1) those

that appear to implicate federal question jurisdiction; and (2) those that are before this Court due to supplemental jurisdiction. Specifically, Counts One and Two of Plaintiffs' Complaint – which allege Defendants Yoder and Smith violated Plaintiffs' Fourth Amendment rights – are the claims that implicate this Court's federal question jurisdiction. ECF No. 1 at 3–4.

Thus, this Court proceeds with the understanding that its jurisdiction is derived from Counts One and Two and the remaining counts are before this Court on account of supplemental jurisdiction per 28 U.S.C. § 1367.

### A. Plaintiffs' Fourth Amendment Claim Against Defendant Yoder

Plaintiffs purport to allege multiple violations of their Fourth Amendment rights. Plaintiffs argue that Defendant Yoder engaged in an unlawful search of Plaintiffs' vehicle and used excessive force. In support, Plaintiffs allege that Defendant Yoder pepper sprayed Plaintiff Benny King – who had not made any aggressive or violent moves – before slamming Plaintiff Benny King against his car and pepper spraying him again. ECF No. 1-1 at 3. Plaintiffs have sufficiently alleged Fourth Amendment claims against Defendant Yoder, specifically with regards to their excessive force claim.

The Court recognizes that historically, expired or faulty car tags are a valid justification for officers to stop and question individuals. See e.g. United States v. Branch, 537 F.3d 328, 355 (noting that observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle). Thus, Defendant Yoder's initial stop and interrogation of Plaintiffs due to their inappropriate vehicle registration tags is not an issue.

However, Plaintiffs also allege an excessive force claim, which Defendant Yoder does not directly address. Courts considering an excessive force claim under § 1983 should apply an objective reasonableness standard to analyze the officer's actions. Graham v. Conner, 490 U.S. 386, 394 (1989). This means that courts examine the actions at issue and weigh them "against what a reasonable police officer would do" under the same circumstances. Rowland v. Perry, 41 F.3d 167, 172 (4th Cir. 1994). The Supreme Court previously held that such an analysis requires "careful attention to the facts . . . including the severity of the crime [], whether the suspect poses an immediate threat . . . and whether [the suspect] is actively resisting arrest . . .". Graham, 490 U.S. at 396.

The facts alleged in Plaintiffs' Complaint – when taken in a light most favorable to Plaintiffs – indicate Defendant Yoder did not act reasonably. Plaintiff Benny King alleges he was not aggressive, yet Defendant Yoder allegedly pepper sprayed Plaintiff Benny King twice and placed him in handcuffs. ECF No. 1-1. At this stage in the litigation, taking the facts alleged in the Complaint as true, it would be premature for this Court to find that Plaintiffs failed to allege a Fourth Amendment violation. Nothing in the alleged facts indicate Plaintiffs committed a particularly severe crime, posed an immediate threat to Defendant Yoder, or actively resisted an arrest attempt. Ultimately, given the purported lack of provocation from Plaintiffs, Detective Yoder's actions do not pass the reasonable objectiveness test.

Notably, it is unclear whether Plaintiffs intend to sue Defendant Yoder in his individual or official capacity. This distinction is crucial, as Defendant Yoder raises the issue of qualified immunity as a defense. ECF No. 6 at 3 ("Public officials and local government units should be entitled to qualified immunity from suit under § 1983 . . ."). As

a rule of thumb, officials sued in their official capacities may not avail themselves of a qualified immunity defense. See Brandon v. Holt, 469 U.S. 464, 472 (1985) (discussing the determination that qualified immunity was not an available defense to defendants named in their official capacity; see also Guzman-Vargas v. Calderon, 672 F. Supp. 2d 273, 294 (D.P.R. 2009) ("Officials sued in their official capacities may not take advantage of a qualified immunity defense.").

Assuming Plaintiffs are suing Defendant Yoder in his individual capacity, the Court still does not find that the qualified immunity defense applies at this stage of the case. The doctrine of qualified immunity shields officials from civil liability as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mullenix v. Luna, 577 U.S. 7, 8 (2015) (citation omitted). The Supreme Court has found that a clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. Based on the allegations in the Complaint, Defendant Yoder's actions could be so unreasonable that any officer would have understood them to be in violation of the Fourth Amendment.

Additionally, whether a defendant officer's conduct is objectively reasonable is generally a "mixed question of law and fact." Jackson v. Tellado, 236 F. Supp. 3d 636, 652 (E.D.N.Y. 2017). It is up to a court to decide whether something is objectively reasonable. Id. at 652–53. But, this determination also has a "principal focus on the particular facts of the case" and the facts are for the factfinder to resolve. Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004). At the motion to dismiss stage, it would be premature for this

Court to make a finding as to whether Defendant Yoder's actions were a reasonable mistake.

Thus, it is inappropriate to dismiss Plaintiffs' Fourth Amendment claim against Defendant Yoder. Accordingly, Defendant Yoder's Motion to Dismiss [ECF No. 5] the Fourth Amendment claim against him is **DENIED**. The case shall proceed in the normal course against Defendant Yoder.

### B. Plaintiffs' Fourth Amendment Claim Against Defendant Smith

Plaintiffs fail to allege any Fourth Amendment claim against Defendant Smith. "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996). Defendant Smith's arrest of Plaintiff Jeremiah King was based upon probable cause because Defendant Smith was informed by Defendant Yoder that Plaintiff Jeremiah King had "fled the scene." ECF No. 1-1 at 4. Nothing in Plaintiffs' Complaint indicates Defendant Smith operated in such a manner that deviated from reason. In fact, this Court finds that it is entirely reasonable for an officer – operating on intel from another presumably trusted officer – to arrest a suspected individual. Accordingly, Defendant Smith's Motion to Dismiss [ECF No. 3] the Fourth Amendment claim against him is **GRANTED**.

### C. Plaintiffs' Malicious Prosecution and Defamation Claims Against Defendant Yoder

Given how interrelated the state law claims are to the Fourth Amendment claims, this Court finds it appropriate to exercise supplemental jurisdiction over Plaintiffs' claims

for malicious prosecution and defamation. It is evident that Plaintiffs fail to allege any claims of malicious prosecution and defamation.

As Defendant Yoder accurately notes in his Response, claims of malicious prosecution and defamation pursuant to West Virginia Code § 55-2-12(c) have a statute of limitations of one year. ECF No. 5 at 6. Plaintiffs' own Complaint alleges that the incident occurred "[o]n or about November 10, 2022" and that the criminal charges against Plaintiffs were dismissed on February 16, 2023. Id. Plaintiffs did not file their Complaint until October 21, 2024, long after the one-year statute of limitations had lapsed for both malicious prosecution and defamation claims.

Thus, Defendant Yoder's Motion to Dismiss [ECF No. 5] as to the malicious prosecution and defamation claims is **GRANTED**.

### D.  Plaintiffs' Negligence Claim Against Defendant City of Paw Paw

For the same reasons detailed above, this Court exercises supplemental jurisdiction over Plaintiffs' negligence claim against Defendant City of Paw Paw. Plaintiffs fail to allege any claim of negligence against the City of Paw Paw. Per West Virginia Code § 29-12A-5, political subdivisions are immune from liability if a claim results from "the method of providing, police [or] law enforcement . . . protection" or a claim is brought for death, injury, or loss to persons or property purportedly caused by an act or omission from said political subdivision. Further, a local government may only be sued under § 1983 if an identifiable government policy or custom inflicted the purported injury. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978) (concluding that a local government may not be sued for an injury inflicted solely by its employees or agents, and that a plaintiff must identify a specific policy or custom they take issue with).

Plaintiffs broadly argue that the City of Paw Paw "failed to train and supervise its officers and failed to preserve critical video evidence." ECF No. 19 at 3. However, Plaintiffs do not proffer any specific argument or facts in their Complaint or Response to support this allegation, nor do they take issue with any specific government policy. Declaratory, over-generalized allegations cannot suffice to meet the pleading standard for a claim of negligence against a political subdivision like the City of Paw Paw. See Monell, 436 U.S. at 694 (holding that a plaintiff must specify a custom or policy they take issue with). Thus, Defendant City of Paw Paw's Motion to Dismiss [ECF No. 5] as to the negligence claims is **GRANTED**.

## IV. Conclusion

For the reasons stated herein, this Court **ORDERS** the following:

Defendant Smith's Motion to Dismiss [ECF No. 3] the Fourth Amendment claim against him is **GRANTED**.

Defendant City of Paw Paw's Motion to Dismiss [ECF No. 5] the negligence claim against it is **GRANTED**.

Defendant Yoder's Motion to Dismiss [ECF No. 5] the Fourth Amendment claim is **DENIED**.

Accordingly, the only cause of action set forth in the Complaint which has not been dismissed – Count One – will proceed in the normal court of action against Defendant Yoder. This Court **DENIES AND DISMISSES WITH PREJUDICE** all other counts as to all other defendants.

The Clerk of Court is **DIRECTED** to transmit a copy of this Order to all counsel of record electronically and another copy to *pro se* Plaintiffs by certified mail, return receipt requested, at their last known address.

**DATED:** February 10, 2026

GINA M. GROH
UNITED STATES DISTRICT JUDGE